1                  UNITED STATES DISTRICT COURT
2                  DISTRICT OF PUERTO RICO

3    CM SERVICES, INC.,

4          Plaintiff,
                                     Civil No. 10-2264 (JAF)

5          v.

6    YESEF CORDERO-LEBRÓN, et. al.,

7          Defendants.

8

9                       **OPINION AND ORDER**

10        Plaintiff sues under 42 U.S.C. §§ 1983 and 1988 for damages and attorneys' fees against

11 Defendants, in their official and personal capacities, alleging an equal protection violation of

12 the Fourteenth Amendment of the U.S. Constitution.  (Docket No. 1 at 7.)  Plaintiff also claims

13 relief under Puerto Rico's general tort provision ("Article 1802"), 31 L.P.R.A. § 5141 (2009).

14 (Id.)  Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6).  (Docket

15 No. 16.)   Plaintiff opposes (Docket No. 18), and Defendants respond (Docket No. 26).

16                               **I.**

17                      **Factual Allegations**

18        We  derive  the  following  facts  from  the  complaint.   (Docket No. 1.)   Plaintiff CM

19 Services, Inc. ("Plaintiff") is a for-profit corporation, chartered under the laws of Puerto Rico,

20 with its main offices also located in Puerto Rico.  (Id. at 1–2.)  Plaintiff's business is to provide

21 engineering and construction contracting services.  (Id. at 2.)  It specializes in managing and

22 developing public housing projects.  (Id.)  Plaintiff held contracts with the Puerto Rico Public

Civil No. 10-2264 (JAF)                                                        -2-

1    Housing Administration ("PRPHA") for over thirteen years, including from 2001-2008, during

2    the gubernatorial administrations of Puerto Rico's Popular Democratic Party ("PDP").  (Id.)

3            In 2008, Governor Luis Fortuño was elected Governor of Puerto Rico.  (Id. at 3.)

4    Fortuño is a member of the New Progressive Party ("NPP"), the rival of the PDP. (Id.)  Shortly

5    after taking office, Fortuño appointed codefendant Yesef Cordero-Lebrón ("Cordero") Secretary

6    of the Puerto Rico Housing Department.  (Id.)  Cordero, also an active member of the NPP,

7    became President of the Governing Board of the PRPHA. (Id. at 3.)  The complaint alleges that

8    Cordero "recuited his trust staff of NPP loyalists" to staff the PRPHA. (Id.)  Cordero installed

9    codefendant Marianita Rosa-Montañez ("Montañez") as Administrator of the PRPHA;

10   Miriam E. Morales-Morales ("Morales") as Interim Associate Administrator of the PRPHA; and

11   Yolanda Rodríguez-Rodríguez ("Rodríguez") as Interim President of the PRPHA's "Bid

12   Board." (Id. at 2–3.)

13           Plaintiff alleges that the Defendants adopted a policy "to exclude all public housing

14   contractors" who, like Plaintiff, had "maintained contractual relationships with PDP

15   administrations." (Id. at 3–4.)  The "flip side" of this policy was to favor new contractors who

16   had little or no experience in the public housing field.  (Id. at 4.)  Plaintiff alleges that

17   Defendants carried out this policy by unfairly disqualifying it in a Request for Proposal ("RFP")

18   proceeding in 2009. (Id.)  Plaintiff was one of fifty-three entities that submitted proposals in

19   the proceeding.  (Id.)

20           According to the complaint, PRPHA disqualified Plaintiff (as well as other contractors

21   who held contracts under PDP administrations) by claiming that Plaintiff's guaranty bond was

22   less than the required amount.  (Id.)  Plaintiff alleges that the PRPHA refused to allow Plaintiff

Civil No. 10-2264 (JAF)                                                                                     -3-

1    to supplement its bond, and then awarded the contracts to entities that were "controlled by NPP

2    loyalists whom defendants wanted to favor from day one." (Id. at 5.)  These NPP-controlled

3    entities' bonds were expired at the time the contracts were awarded.  (Id.)  The complaint also

4    alleges that PRPHA "substantially changed the RFP requirements in order to accommodate" the

5    NPP-affiliated entities, including, inter alia, the requirements for professional liability insurance

6    policies.  (Id.)  Plaintiff alleges that, if the proposals had been evaluated objectively, it would

7    have obtained the highest score in the RFP proceeding.  (Id.)

8                                                        **II.**

9                **Standard for a Motion to Dismiss Under 12(b)(6) and 12(b)(1)**

10           A defendant may move to dismiss an action, based solely on the complaint, for the

11   plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

12   In assessing such a motion, we "accept[] all well-pleaded facts as true, and we draw all

13   reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found., 993

14   F.2d 962, 971 (1st Cir. 1993).

15           "[A]n adequate complaint must provide fair notice to the defendants and state a facially

16   plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

17   In considering a complaint's adequacy, we disregard "statements in the complaint that merely

18   offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of

19   action." Id. (internal quotation marks omitted).  We then take as true what remains,

20   "[n]onconclusory factual allegations . . . even if seemingly incredible." Id.  On the basis of

21   those properly pled facts, we assess the "reasonableness of the inference of liability that the

22   plaintiff is asking the court to draw." Id. at 13.

Civil No. 10-2264 (JAF)                                                              -4-

1                                          **III.**

2                                      **Analysis**

3            Defendants argue that Plaintiff has failed to state a claim under § 1983 and the

4    Fourteenth Amendment.  (Docket No. 16 at 5–11.)  They also raise defenses of qualified

5    immunity and state sovereign immunity.  (Id.)  We agree that Plaintiff has failed to state a claim

6    under the Fourteenth Amendment.[1]  We explain briefly below.

7    **A.    Equal Protection Clause**

8            Defendants argue that Plaintiff's Fourteenth Amendment claim fails, as the alleged

9    discrimination should be analyzed exclusively under the First Amendment.  (Docket No. 16 at

10   5–7.)  Plaintiff responds that because he is not technically "affiliated" with the PDP, his claim

11   is somehow distinct from a classic political discrimination claim under the First Amendment.

12   (Docket No. 18 at 2.)  He argues that because Defendants treated him differently than other

13   similarly-situated contractors, he has a claim for a violation of the Equal Protection Clause of

14   the Fourteenth Amendment.  (Id.)  We disagree, for the reasons stated below.

15           In Pagán v. Calderón, the First Circuit explained that,

16                   [t]o the extent that a plaintiff challenging a discretionary decision
17                   to deny a benefit claims to be entitled to redress based on
18                   allegations of unconstitutional political discrimination or
19                   retaliation, he cannot rely on the Equal Protection Clause but,
20                   rather, must bring his claim under the specific provisions under the
21                   First Amendment.

22   448 F.3d 16, 36 (1st Cir. 2006) (citing Rosenfeld v. Egy, 346 F.3d 11, 15 (1st Cir. 2003); Nestor

23   Colon Medina & Sucesores, Inc., v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)).  This rule

---

[1] Because we agree that Plaintiff has failed to state a claim under the Fourteenth Amendment, we do not reach Defendants' additional arguments.

Civil No. 10-2264 (JAF)                                                                                -5-

1    "depends only on whether a specific constitutional provision addresses the type of conduct at

2    issue," and not on whether the plaintiff will be successful under that provision.  Id.

3           The First Circuit has repeatedly made clear why it believes such a rule is necessary.  In

4    Rosenfeld, 346 F.3d at 15, the circuit court explained the rule in the context of a permitting

5    decision.  The reasoning applies equally well to the RFP proceeding challenged here:

6                         There is an obvious danger to opening up local permitting
7                         decisions to detailed federal judicial scrutiny under equal
8                         protection rubric.  If disgruntled permit applicants could create
9                         constitutional claims merely by alleging that they were treated
10                        differently from a similarly situated applicant, the correctness of
11                        virtually any state permit denial would become subject to litigation
12                        in federal court. . . . Given the overlap of [plaintiff's First
13                        Amendment and equal protection claims], and the vast problems
14                        that would be created, we see little basis or justification for
15                        applying equal protection analysis in the present situation.

16   Id. (quoting Nestor Colon, 964 F.2d at 44–45).

17          Defendants argue that this case law alone is enough to doom Plaintiff's complaint.

18   (Docket No. 16 at 5.)  We agree.  Despite Plaintiff's best efforts to characterize the case as one

19   arising under the Fourteenth Amendment, the complaint makes clear that this is a tale of

20   political discrimination.  Plaintiff writes that the "motivating factor" for the Defendants'

21   disqualification of Plaintiff's RFP was an "intent to discriminate against those who had business

22   dealings with prior PDP administrations[.]" (Docket No. 1 at 5.)  The result of this policy was

23   to favor entities controlled by "NPP loyalists."  (Id.)  Such allegations are "insufficient to

24   ground a claim that the politically-inspired misconduct violated equal protection guarantees."

25   Pagán, 448 F.3d at 37 (citing Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir.

1    1996) (finding that plaintiff's equal protection claim "flounders, as it is a mere restatement of

2    [a] failed First Amendment claim")).

3           Moreover, even if Plaintiff could bring a claim on these facts under the Fourteenth

4    Amendment, Plaintiff has failed to plead the necessary elements of an equal protection

5    violation.  We find that "this case is most analogous to denials of benefits such as licenses or

6    permits," which implies "a particular model of equal protection analysis."[2]  Id. at 34.  In benefit-

7    denial cases, the plaintiff faces a "steep uphill climb."  Id.  He may succeed "only if he shows

8    that: (i) he was treated differently than other similarly-situated supplicants, and (ii) the

9    differential treatment resulted from a gross abuse of power, invidious discrimination, or some

10   other fundamental procedural unfairness."  Id.

11          Defendants argue that Plaintiff has failed to show he was similarly situated to the other

12   contractors. (Docket No. 16 at 9.)  In response, Plaintiff points to paragraphs 3.9 to 3.21 of the

13   complaint. (Docket No. 18 at 4.)  Those pleadings state that Plaintiff "had been favored in prior

14   RFP proceedings"; that Plaintiff was one of fifty-three proponents to submit a proposal for this

15   RFP; that Plaintiff had posted a five percent guaranty bond; that all the other competitors'

16   guaranty bonds had expired by the time the contracts were awarded; and that "objectively

17   speaking, plaintiff's proposal, had it been evaluated, would have obtained the highest score in

18   the RFP proceeding, considering the requisite factors of experience, costs and technical

---

[2] Plaintiff attempts to avoid this case law by directing the court to Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 515 (1st Cir. 2009).  These efforts are unavailing.  In that case, the defendants conducted an unwarranted government investigation into plaintiffs' business and personal affairs, issued ex-parte subpoenas and "practically closed [Plaintiff] down in [his] insurance business." Id. at 513.  This type of behavior, in which defendants "single[d] out Plaintiffs for sanctions, with no rational basis," is quite distinct from the denial of an affirmative government benefit, such as a contract award in a competitive RFP proceeding as alleged here.  See Pagán, 448 F.3d at 34 (discussing "particular model of equal protection analysis" that applies to "denials of benefits").

Civil No. 10-2264 (JAF)                                                    -7-

1    capacity." (Docket No. 1 at 4–5.)  Plaintiff notes that the winning bidders in this RFP

2    proceeding obtained scores of 80 and 65 points, while in the last RFP proceeding in which

3    Plaintiff was allowed to compete, it obtained a score of 89.31.  (Id. at 5.)

4            Under relevant Supreme Court precedent, this is insufficient to show that Plaintiff was

5    similarly situated.  To state a viable equal protection claim, Plaintiff must show that he was

6    similarly situated to the other bidders in "all relevant respects."  Nordlinger v. Hahn, 505 U.S.

7    1, 10 (1992).  We agree with Defendants that Plaintiff's complaint falls short of this standard.

8    The bare statement that Plaintiff "would have obtained the highest score in the RFP proceeding"

9    is insufficient.  "Even within the generous confines of notice pleading, courts must continue to

10   eschew . . . reliance on bold assertions and unreliable conclusions."  Redondo-Borges v. U.S.

11   Dep't. of Hous. & Urban Dev., 421 F.3d 1, 9 (1st Cir. 2005) (internal quotation marks and

12   citations omitted).  In the context of an RFP proceeding, where various factors are taken into

13   account, Plaintiff needs to do more than point to past performance to show that it was similarly

14   situated to other applicants.  See Pagán, 448 F.3d at 35 (discussing difficulty of unsuccessful

15   loan applicant showing that he was similarly situated to successful applicant, where myriad

16   factors are taken into account).

17           "In all events, there is a more basic reason why [Plaintiff's] equal protection claim does

18   not pass constitutional muster: its allegations fail to satisfy the second half of the equal

19   protection test."  Id.  The complaint does not allege that Defendants' actions constituted a gross

20   abuse of power, invidious discrimination, or fundamentally unfair procedures.  Id.

21           First, Plaintiff's allegations do not approach the level that courts have said constitutes

22   a "gross abuse of power."  The First Circuit has "equated this concept with the 'shocks the

conscience' concept used in substantive due process cases." Id. (citing Baker v. Cox, 230 F.3d at 470, 474 (1st Cir. 2000)).   This standard requires more than a bad faith denial of a government benefit; this threshold is met "only in truly horrendous situations," where plaintiff can demonstrate an "extreme malicious orchestrated campaign." Baker, 230 F.3d at 474 (internal quotation marks and citations omitted).   An example would be a city official "wreak[ing] havoc on the landlord in multiple ways," by turning off the landlord's gas, water and sewage services, charging the landlord with building code violations, and frustrating relations with a contractor, all without "any vestige of legitimate government purpose served." Id. (citing Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995)).   Nothing Plaintiff has alleged approaches this level of injustice. See id.

Second, Plaintiff's complaint does not allege any invidious discrimination.  In an equal protection context, invidious discrimination means discrimination based on suspect or quasi-suspect classifications, such as race or gender. Pagán, 448 F.3d at 36.  "The universe of suspect or quasi-suspect classifications does not encompass legislative classifications, such as classifications based on political affiliation." Id. (citing Vieth v. Jubelirer, 541 U.S. 267, 293 (2004)).   Because Plaintiff's allegations of political discrimination do not fit within the "universe of suspect or quasi-suspect classifications," they cannot constitute invidious discrimination. Id.

Nor does Plaintiff's complaint suggest the type of "egregious" behavior that constitutes a "fundamentally unfair procedure." Creative Env'ts., Inc. v. Estabrook, 680 F.2d 822, 832 (1st Cir. 1982).  That standard may be met when government action discriminates based on race, or infringes on "fundamental constitutional rights." Id. (citing Yick Wo v. Hopkins, 118 U.S. 356

Civil No. 10-2264 (JAF)                                                                              -9-

(1886); <u>Roe v. Wade</u>, 410 U.S. 113 (1973)).  "But the ordinary state administrative proceeding"

does not give rise to a constitutional violation, "regardless of how disappointed the license or

privilege seeker may feel at being turned down." <u>Creative Env'ts.</u>, 680 F.2d at 832.  As the First

Circuit has repeatedly held, the denial of benefits alleged here is "not nearly grave enough to

raise constitutional concern." <u>Collins v. Nuzzo</u>, 244 F.3d 246 (1st Cir. 2001) (holding that

denial of license not susceptible to equal protection treatment).

**D.     Puerto Rico Claims**

        Plaintiff also brings claims arising under Puerto Rico Law.  (Docket No. 1 at 7.)  The

jurisdictional basis for maintaining Plaintiff's Puerto Rico claims has been undermined by

dismissal of its federal claims.  Accordingly, those supplemental Commonwealth claims are

**DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

**IV.**

**Conclusion**

        Given the foregoing, we hereby **GRANT** Defendants' Motion to Dismiss pursuant to

Rule 12(b)(6).  (Docket No. 16.)  We **DISMISS WITH PREJUDICE** Plaintiff's claims under

§§ 1983, 1988, and the Fourteenth Amendment of the U.S. Constitution.  We **DISMISS**

**WITHOUT PREJUDICE** Plaintiff's Puerto Rico law claims.

        **IT IS SO ORDERED.**

        San Juan, Puerto Rico, this 5th day of March, 2012.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        U.S. District Judge